Providence Washington Insurance Company, of Providence, Rhode Island *vs.* Louis Adler and David Adler, trading as Cape Ann Oil Clothing Company.

*Marine policy—Insurance against Fire—Spontaneous Combustion.*

In an ordinary marine policy, the insurance against fire does not cover the case of spontaneous combustion, caused by the inherent infirmity of the goods insured.

Appeal from the Superior Court of Baltimore City.

This action was brought by the appellees against the appellant to recover on its policy of marine insurance. The case is stated in the opinion of the Court.

*Exception.*—At the trial below, the evidence being closed, the plaintiffs asked the following instructions:

1. That if the jury shall find from the evidence in this cause that the plaintiffs effected the policy of insurance offered in evidence, and shall further find that after the execution and delivery of the said policy, the oil clothing mentioned therein, and in the sundry entries in the book attached to the said policy, or any part of the said oil clothing, was, during the month of October, after the 23rd day of the month, and during the months of November or December, in the year 1883, damaged by fire or fires, and the notice of said loss or losses was communicated by the plaintiffs to the defendant, with due and reasonable diligence on their part, after the said damage had been sustained, and that proofs of loss were furnished the defendant by the plaintiffs, and that the same were furnished with reasonable diligence after the fire, and that the defendant has not paid the said loss, nor any portion thereof, and

that the amount of said loss from fire, in the case of each shipment entered in the said book, and so damaged by fire, was in excess of twenty per cent. of the value of the same, then their verdict must be for the plaintiffs.

2. That if the jury shall find the facts as set forth in the plaintiffs' first prayer, then their verdict shall be for such proportion of the loss or damage sustained by the plaintiffs on such of the shipments entered in the book, attached to the policy of insurance offered in evidence, as were so damaged by fire, not exceeding the amount of insurance on each, as the amount underwritten in each case bears to the whole amount at risk in each case.

3. That the jury may, in their discretion, allow interest upon the amount of their verdict, accounting the same from a date sixty days after the proofs of loss were furnished the agents of the company, as testified to by Louis Adler.

4. That the defendant in taking a risk like the present, upon oil cloth clothing, is presumed to know, and to have contemplated all the casualties and incidents to which the subject insured might be liable, and that the plaintiffs are entitled to recover, provided they find the facts to be as set forth in the first prayer of the plaintiffs, even should the jury find that the loss proceeded from spontaneous combustion; should the jury further find that spontaneous combustion is one of the casualties and incidents to which the subject insured is liable.

The defendant then submitted to the Court the following instructions, which, it asked, should be given to the jury:

1. That the plaintiffs under the pleadings in this case cannot recover, if the jury shall find from the testimony that the oil cloth coats, called "Flickers," shipped by the plaintiffs to their consignees in Louisiana and Texas, were damaged or destroyed from spontaneous combustion caused by their inherent infirmity.

2. That it is competent for the jury to find from the testimony in this case, to what extent the oil cloth coats .were damaged, and what loss the plaintiffs suffered by such damage, should they, under the instructions of the Court, find a verdict for the plaintiffs.

The Court (FISHER, J.,) granted the prayers of the plaintiffs, as also the second prayer of the defendant, but rejected the defendant's first prayer. The defendant excepted. The verdict and judgment were for the plaintiffs, and the defendant appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, and BRYAN, J.

*John R. Kenly,* for the appellant.

The law, so far as it can be ascertained from authority, is this—that if the perishable nature of the subject—if the inherent infirmity of the subject—be not set in motion, made active by a peril, covered by the policy, the underwriter is not liable. *Boyd vs. Dubois,* 3 *Camp.,* 133.

If such a case as this had been presented to Lord ELLENBOROUGH, who can doubt but that his views would have been much more sententiously expressed than they are? Let these appellees show, if they can, by the record, that a peril covered by our policy was the proximate cause of the loss. But there can be no question, looking to the testimony, that this loss was caused by the inherent infirmity—the perishable nature, of the subject, and that when this policy was effected the appellant was not aware " that spontaneous combustion was one of the casualties and incidents to which the subject insured was liable "— and from the testimony of the assured could not be presumed to know it. *Emerigon, ch. XII, s.* 11, *sec.* 1, *Meredith Edition,* 290; 2 *Parsons on Contracts,* 374-5.

*Frank P. Clark*, for the appellees.

There is not a scintilla of evidence in the case to show that there was any "inherent infirmity" in the property insured that rendered it liable to spontaneous combustion; on the contrary, the evidence is all the other way.

Spontaneous combustion is a peril covered by a policy insuring against fire. *May on Insurance, p.* 620, *sec.* 413, *or* 497; 2 *Parsons on Mar. Law*, 216, *Ed.* 1859; *Ins. Co. vs. Dorsey*, 56 *Md.*, 79 *and* 83; *Br. Am. Ins. Co. vs. Joseph*, 9 *Lower Canada, Q.B., Appeal side*, 448; 4 *Waite's Actions and Defences*, 69.

But even were this principle a doubtful one, the defendant's first prayer was properly refused, because the insurer " is presumed to know and to have contemplated all the casualties and incidents to which the subject insured might be liable," and the case of spontaneous combustion is not an exception to this well-established principle. *Steinbach vs. Lafayette Ins. Co.*, 54 *N. Y.*, 98; *Whitemarsh vs. Conway Ins. Co.*, 16 *Gray*, 359; *Harper vs. Albany Mu. Ins. Co.*, 17 *N. Y.*, 98; *Bryant vs. Ins. Co.*, 17 *N. Y.*, 200; *Harper vs. N. Y. Ins. Co.*, 22 *N. Y.*, 441; *Wash. Mu. vs. Ins. Co.*, 5 *Ohio*, 450; *Brown vs. King's Co. Ins. Co.*, 31 *How.*, 508; *Washington Ins. Co. vs. Davidson*, 30 *Md.*, 91, 108; *Franklin Ins. Co. vs. Chicago Ins. Co.*, 36 *Md.*, 102; *Md. Ins. Co. vs. Bossiere*, 9 *G. & J.*, 121; *Flanders on Insurance*, 347; *Harper vs. City Ins. Co.*, 1 *Bosworth*, 520; *Wall vs. Howard Ins. Co.*, 14 *Barb.*, 383.

STONE, J., delivered the opinion of the Court.

The plaintiffs shipped by a line of steamers, running from New York to the south, a quantity of oil cloth clothing to Louisiana and Texas. They insured this clothing before shipment in the office of the defendant company. The clothing was packed in boxes, and on its arrival at its destination, it was found injured and comparatively worth-

less, either by spontaneous combustion or by some chemical action arising from the material in the goods themselves. They all presented the appearance of having been burned or charred within the boxes. The clothing was not injured by any external force or accident, but whatever the injury was, it was the result of the inherent infirmity of the goods themselves. Neither the plaintiffs nor the defendants knew at the time the insurance was effected, that the goods were liable to spontaneous combustion, or to be injured by any inherent defect in the goods. No extra premium to cover such risk was paid.

Under these circumstances, the defendants claim that by the general principles of insurance law, they are not liable for a loss by spontaneous combustion, caused by the inherent infirmity of the goods themselves.

This was a marine policy, and one of the dangers insured against, by the terms of the policy, was fire. But while this is undoubtedly so, the question remains, and is still undecided in this State, whether the term "fire" used in the ordinary marine policy will, upon general principles, cover the case of spontaneous combustion, caused by an inherent infirmity in the article insured, and not the result of accident or peril of the sea. There is no doubt of the liability of the defendant company, under its policy, had the ship taken fire, and the goods been consumed; or had the fire originated from any of the perils insured against; but the question is a very different one, when, as in this case, the goods are in good faith insured, and believed both by plaintiffs and defendant, not to be liable to spontaneous combustion by reason of their inherent infirmity, but which in fact were so liable, and were so injured.

The authorities are few upon this subject, and neither full nor satisfactory. One of the oldest to which we have access is *Emerigon*, who says, page 290:

"Art. 12 of another title establishes, as a general rule, that everything which happens through the *inherent vice*

*of the thing*, or by the act of the owners, master or merchant shipper, shall not be reputed a peril, if not otherwise borne on the policy."

It is then certain that the insurers never answer for damages and losses which happen directly through the act or fault of the assured himself. It would be in fact intolerable that the assured should be indemnified by others, for a loss of which he is the author. This rule is grounded on first principles. It is a general rule, from which it is not permitted to derogate by a contrary agreement. As *Pothier* remarks, "it is evident that I cannot validly agree with any one, that he shall charge himself with the faults that I shall commit."

We do not understand this learned author to mean, that an article may not be insured that is inherently liable to spontaneous combustion, or decay, *provided it is so expressed in the policy*, but not otherwise. But if the loss happens through *the fault of the assured*, then the insurers are not liable, whatever may be the terms of the policy. For example, if an article is insured, which *when dry* is not liable to spontaneous combustion, but when he puts it on board, *it is wet*, in such case no recovery can be had. Such we understand to be the views of this author.

The next case to which we are referred, is the case of *Boyd vs. Dubois*, 3 *Campbell*. In that case Lord ELLEN-BOROUGH said, "If the hemp was put on board in a state liable to effervesce, and it did effervesce, and generate the fire which consumed it, upon the common principles of insurance law, the assured cannot recover for a loss which he himself has occasioned."

The defendant in that case attempted to prove that the hemp, which was insured, was put aboard ship in a *damaged* condition; and for that reason, was apt to ferment and take fire.

This case is in accord with *Emerigon*.

The next authority, is *Parsons on Contracts*, 2 *vol.*, page 374, 6th *edition*. The author therein says:

"It is another rule, that insurers are not liable for property destroyed by the effect of its own *inherent deficiencies or tendencies*, unless these tendencies are made active and destructive, by a peril insured against. Thus, if hemp, which was dry when laden, be afterwards wet by a peril of the sea, and by reason of such wet ferments, or rots, or burns, the insurers would be liable." And that very learned author refers to both *Emerigon* and the case of *Boyd & Dubois* as his authorities.

Chancellor KENT also takes a similar view, in his *Commentaries*, 3 *Volume*, ch. 48.

*Phillips on Insurance, ch.* 13, *marginal page*, says:

"It is a general rule that insurers are not, under the common form of the policy, liable to any damage or loss arising from the qualities or defects of the subject insured, since these are not among the perils assumed by the underwriter."

*Parsons on the Law of Marine Insurance, vol.* 2, *page* 216, holds the same view. He says:

"It is also a rule, that the insurers are liable for no subject-matter of insurance, which is destroyed by reason of its own inherent defects or tendencies. But this rule does not apply to tendencies which are called into activity only by a peril insured against. Thus, if hemp insured, burns up, or rots from spontaneous ignition or fermentation, it being known that this may happen, if the hemp be damp, but not if it be dry, the question would be, whether it was damp or dry, when it was put on board. But if the hemp were dry when laden, and was afterwards wet by reason of the straining of the ship in a storm, or by the shipping of a sea, or any like peril, then the insurers, whether on ship or cargo, would be liable."

All these authorities refer to *Emerigon* and the case in 3 *Campbell*, and are all upon marine insurance.

On the other hand, we have been referred to the case of *The British American Insurance Co. vs. Joseph*, de-

cided in the Court of Appeals for Lower Canada, which has been supposed to decide that a fire insurance (not marine) covers the risk of spontaneous combustion; and citing that case only, Mr. *May*, in his *Work on Fire Insurance*, comes to the same conclusion.

The *Lower Canada* case is certainly very imperfectly reported. The report is in French, and the Court gave no opinion; the terms of the policy are not set out, and but a very few of the facts in the case. It is by no means clear, from the few facts that are stated, that the spontaneous combustion did not originate in a heap of *uninsured* coal, and extend from that to the insured coal.

But suppose the case has all the effect claimed for it, by the appellees, and does decide that in a purely fire insurance, the risk of spontaneous combustion is covered, we could not agree that it should overrule the long list of high authorities to the contrary in marine policies. More especially since the reasons to the contrary, we think, are satisfactory.

No well managed insurance company would take a marine risk, on an article inherently liable to spontaneous combustion; nor would any prudent shipmaster or owner receive such on his vessel, as not merely the property so insured, but the property of others, and the safety of the ship, and the lives of the crew, would be endangered by so doing. It would, as *Emerigon* says, be intolerable that the owner should receive pay for goods, that destroyed themselves. The object of a marine policy is to insure against the perils of the sea, and not against the perils incident to the goods themselves.

In this case it is very clear that the goods were injured by their own inherent infirmity, and that such inherent infirmity was not called into activity by any peril insured against. We think such loss was not within the contemplation of either party to the contract of insurance. That the term, "fire," used in the policy, included fire from

Providence Washington Ins. Co. *vs.* Adler.

accident, or brought about by a peril of the sea, and not spontaneous combustion.

Entertaining these views, we think, the Court below was in error, in granting the fourth prayer of the plaintiffs, and in refusing the first prayer of the defendant, and the judgment must be reversed. But inasmuch as the evidence is full and explicit, that the injury was caused by the inherent infirmity of the goods, a new trial will not be awarded.

*Judgment reversed.*

(Decided 11th March, 1886.)

Application was made in this case, on the 1st of April, 1886, in behalf of the appellees, for a re-hearing, upon the ground that the Court was in error, in determining that there was full proof in the record, that the injury was caused by the inherent infirmity of the goods insured. Upon a careful re-examination of the case, the Court were of the opinion that their judgment was justified by the evidence in the record, and disallowed the application; but, assuming that the appellees might be able to furnish other evidence on the point in question, not offered in the former trial, the case was remanded, and a new trial was awarded.